IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

SNEIDER GONZALEZ-PERALTA,

*Defendant*.

Case No. 24-CR-10020-01-EFM

**MEMORANDUM AND ORDER**

Before the Court are Defendant Sneider Gonzalez-Peralta's Motions to Dismiss Count 1 against him (Docs. 12 and 13). In Count 1, Defendant was indicted for violating 18 U.S.C. § 922(g)(5), which prohibits an alien illegally and unlawfully in the United States from possessing a firearm. Defendant challenges the constitutionality of § 922(g)(5) on Commerce Clause grounds and Second Amendment grounds. For the reasons stated below, the Court denies Defendant's Motions to Dismiss.

I.   **Factual and Procedural Background**[1]

When Defendant was 13 years old, he traveled to the United States from Honduras with his mother and younger brother. They entered the United States on or about April 29, 2016, and were arrested by Immigration and Customs Enforcement the following day.

---

[1] The facts in this section are taken from the Indictment and Defendant's "Anticipated Facts" section in his Motion to Dismiss.

Defendant was served with a Notice to Appear on May 24, 2016. That same day, he was released on his own recognizance and required to live with his mother. Defendant attended Wichita Southeast High School through tenth grade.

In June of 2019, Defendant's request for a Work Authorization Card was approved, and he was issued an Employment Authorization Document commonly called a work permit. He worked as a roofer until he was detained and ultimately removed from the United States on March 3, 2021.

Defendant returned to the United States in August 2021. He moved to Wichita, Kansas where he resided with family. He again obtained employment and worked as a roofer until his arrest on January 1, 2024. That day, a Wichita police officer stopped Defendant for a traffic violation. He was searched and a Glock 9mm handgun was found in his left pants pocket.

On February 21, 2024, Defendant was indicted for unlawful possession of a firearm by an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5). On May 15, 2024, Defendant filed two motions to dismiss—one on Commerce Clause grounds and another on Second Amendment grounds. The Government responded on May 29 and June 14, 2024, respectively. Defendant replied on July 24, 2024. The motions are now ripe for ruling.

## II.     Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3), a defendant may "raise by pretrial motion any defense . . . that the court can determine without a trial on the merits," including "failure to state an offense."[2] "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."[3]

---

[2] Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).

[3] *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

Nonetheless, the Tenth Circuit has recognized that courts "may always ask 'whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence' and dismiss the indictment if its allegations fail that standard."[4] As such, "the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."[5] Instead, the indictment is tested "solely on the basis of the allegations made on its face, and such allegations are to be taken as true."[6]

When the defendant asserts that a statute is unconstitutional on its face, resolving the motion "doesn't require a trial because it focuses solely on the facts alleged in the indictment and their legal adequacy."[7] Thus, the Court "may entertain motions that require it to answer only pure questions of law."[8] However, when a defendant claims that a statute is unconstitutional as applied—in other words "only in light of the 'facts surrounding the commission of the alleged offense'"—a court may not consider those facts before trial.[9]

### III.     Analysis

**A.     Commerce Clause Challenge**

Defendant's first argument for dismissal contends that § 922(g)(5) violates the Commerce Clause. Defendant acknowledges that the Court "is bound by Tenth Circuit precedent interpreting 'affecting commerce' to deny this motion."[10] The Court agrees. The Tenth Circuit has consistently

---

[4] *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)).

[5] *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

[6] *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (quoting *United States v. Reitmeyer*, 356 F.3d 1313, 1316 (10th Cir. 2004)).

[7] *Pope*, 613 F.3d at 1260 (citing *United States v. Sampson*, 371 U.S. 75, 78–80 (1962)).

[8] *Id.*

[9] *Id.* at 1261 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

[10] *United States v. Davey*, 2024 U.S. Dist. LEXIS 16030, at *27 (D. Kan. Jan. 30, 2024) (quoting *United States v. Patton*, 451 F.3d 615, 634–35 (10th Cir. 2006))

upheld § 922(g) in the face of Commerce Clause challenges.[11] Thus, as Defendant acknowledges in his argument, he brings this motion solely to preserve the issue for appeal. Although Defendant is free to challenge binding Tenth Circuit precedent, this Court is not. Accordingly, the Court rejects Defendant's Commerce Clause challenge to § 922(g)(5).

**B.      Second Amendment Challenge**

Defendant's second argument for dismissal contends that § 922(g)(5), as applied to his specific conduct, violates the Second Amendment after the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*.[12] A party "may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both."[13] "An as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case."[14] An "as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case" at hand.[15]

At the outset, the Court is wary to resolve Defendant's as-applied challenge at this stage in the proceedings because the Tenth Circuit has at various times directed district courts "to decide the issue after the government has presented its evidence at trial."[16] "Courts uniformly have held that an as-applied challenge made pretrial is premature and a defendant may reassert the argument

---

[11] *See, e.g.*, *Patton*, 451 F.3d at 620; *United States v. Campbell*, 603 F.3d 1218, 2020 n.1 (10th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009); *United States v. Dorris*, 236 F.3d 582, 286 (10th Cir. 2000); *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996).

[12] 597 U.S. 1 (2022).

[13] *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011).

[14] *Davey*, 2024 U.S. Dist. LEXIS 16030, at *3 (citing *United States v. Streett*, 434 F. Supp. 3d 1125, 1171–72 (D.N.M. 2020)).

[15] *Carel*, 668 F.3d at 1217 (further citations and quotations omitted).

[16] *United States v. Bell*, 2017 U.S. Dist. LEXIS 62616, at *14 (D. Kan. Apr. 25, 2017) (quoting *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (declining to resolve an as-applied challenge to § 922(g)(3))).

post-trial after the government has presented its evidence on the charge."[17] Thus, to the extent Defendant's motion is premature, the Court denies Defendant's Motion without prejudice. However, even if the Court were to analyze Defendant's anticipated facts presented in his Motion to resolve his as-applied challenge, it nonetheless fails under *Bruen*'s framework.

Before *Bruen*, the circuit courts had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny."[18] The Tenth Circuit was among those that employed a means-ends framework.[19] Although *Bruen* established a new analytical framework, it has not proven to be a major change in the constitutionality of criminal firearms statutes. In fact, no circuit court has held § 922(g)(5) "to be unconstitutional, either before or after *Bruen*."[20]

Under the *Bruen* framework, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[21] That presumption can be overcome only when the Government successfully "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation."[22] Thus, to determine whether § 922(g)(5) remains viable post-*Bruen*, the Court must first assess whether the Second Amendment's plain text covers Defendant's alleged conduct.

1.   Plain Text

At step one of the *Bruen* framework, the Court must consider whether Defendant can claim protection under the Second Amendment. To do so, the Court must apply the "plain text" of the

---

[17] *Id.* at *14–15 (collecting cases).

[18] *Bruen*, 597 U.S. at 17.

[19] *See United States v. Reese*, 627 F.3d 792 (10th Cir. 2010).

[20] *United States v. Rangel-Tapia*, 2024 U.S. App. LEXIS 5591, at *9 (6th Cir. Mar. 6, 2024).

[21] *Bruen*, 597 U.S. at 17.

[22] *Id.*

Second Amendment to the individual's "proposed course of conduct."[23] The Second Amendment reads: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[24] Determining exactly who are "the people" entitled to Second Amendment protection requires the Court to conduct a textual analysis.

In this case, Defendant challenges § 922(g)(5), which makes it unlawful "for any person who, being an alien illegally or unlawfully in the United States, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."[25]

Prior to *Bruen*, the Second, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits upheld § 922(g)(5) as constitutional. The Fourth, Fifth, and Eighth Circuits found that the Second Amendment does not protect illegally present aliens.[26] The Second, Ninth, Tenth, and Eleventh Circuits upheld § 922(g)(5), "assuming, for the purposes of [the] case, that the Second Amendment, as a 'right of the people,' could very well include . . . at least some aliens unlawfully here—and still easily find § 922(g)(5) constitutional."[27]

Of course, this Court cannot fault the Tenth Circuit for glossing over *Bruen*'s first step before *Bruen* was decided. But the practical implications of such a decision leave this Court

---

[23] *Id.* at 32.

[24] U.S. Const. amend. II.

[25] 18 U.S.C. § 922(g)(5)(A).

[26] *United States v. Carpio-Leon*, 701 F.3d 974, 982 (4th Cir. 2012) (holding, on a § 922(g)(5) as-applied challenge, "that the Second Amendment right to bear arms does not extend to illegal aliens"); *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011), *as revised* (June 29, 2011) (finding, on § 922(g)(5) facial and as-applied challenges, that the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States"); *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011) (holding, on a § 922(g)(5) facial challenge, that "the protections of the Second Amendment do not extend to aliens illegally present in this country").

[27] *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012) (emphasis omitted) (addressing a § 922(g)(5) as-applied challenge); *see also United States v. Perez*, 6 F.4th 448, 450 (2d Cir. 2021) (addressing a § 922(g)(5) as-applied challenge); *United States v. Torres*, 911 F.3d 1253, 1261 (9th Cir. 2019) (addressing a § 922(g)(5) facial challenge, stating that "the state of the law precludes us from reaching a definite answer on whether unlawful aliens are included in the scope of the Second Amendment right"); *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045 (11th Cir. 2022) (in a § 922(g)(5) challenge, stating that "[w]e can assume for the sake of our decision that [defendant] is" among "the people").

without any binding circuit precedent on how to determine whether an illegally present alien is a part of "the people," as required by *Bruen*. As such, this Court will look directly to Supreme Court precedent and the persuasive authority of other circuit courts to resolve the issue.

After *Bruen*, the Eight Circuit is the only circuit court thus far to have considered the constitutionality of § 922(g)(5). Relying upon its pre-*Bruen* decisions, the court held that "unlawful aliens are not part of 'the people' to whom the protections of the Second Amendment extend."[28] The court acknowledged that its "opinion is short on explanation" but maintains its position nonetheless because "[n]othing in *Bruen* casts doubt on our interpretation of this phrase."[29] Though perhaps the court's conclusion is correct, it gives this Court little analysis to use for its reasoning. So, the Court turns to Supreme Court precedent.

Although the Supreme Court has not explicitly defined "the people," *Bruen* did frequently refer to "law-abiding citizens" as the individuals possessing Second Amendment rights.[30] Specifically, the Supreme Court instructed lower courts to evaluate "how and why the regulations burden a *law-abiding citizen*'s right to armed self-defense,"[31] Ultimately, however, the citizenship question was not before the Supreme Court, rendering this language dicta. Although not dispositive, it appears logically consistent to conclude that illegally present aliens do not fit into the categories of "law-abiding" or "citizens."[32] And "federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings."[33]

---

[28] *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023).

[29] *Id.* at 985.

[30] The *Bruen* majority uses this phrase 11 times in its opinion. The phrase is used at least five other times throughout the rest of the opinion.

[31] *Bruen*, 597 U.S. at 29 (emphasis added).

[32] *United States v. Figueroa-Camarillo*, 2024 U.S. Dist. LEXIS 67711, at *4 (D.N.M. Apr. 12, 2024).

[33] *Tokoph v. United States*, 774 F.3d 1300, 1303–04 (10th Cir. 2014) (further citations and quotations omitted).

Defendant concedes that many illegally present aliens may not have a constitutional right to possess firearms because many are not a part of "the people" to whom this right extends. In his case, however, Defendant argues that he is a part of "the people" entitled to a Second Amendment right. He argues that he came to the United States at age 13, and he is now 21. Thus, he has lived in the United States for almost eight years. He also highlights that he attended high school in Wichita, Kansas, and entered the workforce as a roofer once he obtained a Work Authorization Card. Because of these facts, Defendant purports to have "sufficient ties to the United States" to be considered a "member of the political community," and thus a part of "the people."

The Court disagrees. Analyzing the reasoning in *Bruen* and its predecessors,[34] the Court reaches the same conclusion as the Eighth Circuit—that is, "the plain text of the [Second] Amendment does not cover *any* conduct by *unlawfully present* aliens."[35] This reasoning is consistent with Tenth Circuit precedent. In *United States v. Huitron-Guizar*, although the Tenth Circuit assumed that the Second Amendment could include at least some unlawfully present aliens, it ultimately concluded that the defendant was not one of those people. In that case, the defendant was brought to the United States at age three and was arrested at age 24—spending almost three times as long in this country as Defendant.[36] Yet the Tenth Circuit held that "[t]he law applies with equal force to those who entered yesterday and those who . . . were carried across the border as a toddler."[37] Thus, Defendant has provided this Court with no compelling reason why § 922(g)(5)

---

[34] Namely, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

[35] *Sitladeen*, 64 F.4th at 987 (emphasis added). *But see Huitron-Guizar*, 678 F.3d 1170 (noting that "[n]othing is this opinion purports to express an opinion on the Second Amendment rights of *lawfully present* aliens" (emphasis in original)).

[36] *Huitron-Guizar*, 678 F.3d at 1165.

[37] *Id.* at 1170.

is uniquely unconstitutional in his situation, but not in the case of other illegally present aliens with seemingly stronger ties to the United States. Accordingly, § 922(g)(5) withstands Defendant's Second Amendment challenge.

**IT IS THEREFORE ORDERED** that Defendant Sneider Gonzalez-Peralta's Motions to Dismiss (Docs. 12 and 13) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 5th day of August, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE